# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES A. JALOVEC,

                Plaintiff,

v.                                          Case No. 05-C-250

SYNAGRO MIDWEST, INC.,

                Defendant.

## ORDERS ON THE PARTIES' POST-TRIAL MOTIONS

On January 26, 2005, James A. Jalovec ("Jalovec") filed a complaint against Synargo Midwest, Inc., ("Synargo") in Milwaukee County Circuit Court alleging breach of contract and defamation. Based upon the diversity of the parties and the amount in controversy, Synargo removed the action to federal court on March 4, 2005. (Docket No. 1.) This case was reassigned to this court upon all parties consenting the full jurisdiction of a magistrate judge. (Docket No. 8.)

On April 11, 2005, Synagro answered the complaint and filed a counterclaim seeking reimbursement for property taxes and maintenance costs and indemnification, (Docket No. 9), which Jalovec answered on May 6, 2005, (Docket No. 13).

On April 16, 2007, Synagro filed a motion for leave to file an affirmative defense, specifically the affirmative defense of unclean hands. (Docket No. 48.) Jalovec opposed this motion, (Docket No. 67), and on April 27, 2007, Synagro replied, (Docket No. 71). On May 21, 2007, this court denied Synagro's motion to file an affirmative defense. (Docket No. 74.)

On April 23, 2007, the parties stipulated to the dismissal of Jalovec's defamation cause of action, (Docket No. 63), and on April 25, 2007, this court dismissed this cause of action, (Docket No. 70).

On March 9, 2007, this court referred this case to Magistrate Judge William E. Callahan, Jr. for mediation, (Docket No. 47), which occurred on August 23, 2007, and did not result in a settlement of this matter, (Docket No. 90).

On September 17, 2007, this court held a final pretrial conference. (Docket No. 139.) Jalovec filed seven motions in limine. (Docket Nos. 96, 97, 98, 99, 100, 101, 102.) Synagro filed twenty-two separate motions in limine. (Docket Nos. 106, 108, 109, 110, 111, 112, 113, 114, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 131.) The parties responded to the opposition's respective motions, and on September 21, 2007, this court issued an order resolving these motions in limine. (Docket No. 193.) On September 24, 2007, there was a flurry of filings beginning with Synagro's motion in limine, (Docket No. 194), which Jalovec then moved to strike as untimely, (Docket No. 196). The court denied the motion in limine on its merits, (Docket No. 199), and Jalovec then moved for reconsideration, (Docket No. 200), which the court denied.

A jury trial commenced on October 1, 2007, (Docket No. 211). Following an eight-day jury trial, on October 11, 2007, the jury returned a verdict in favor of Jalovec and awarded Jalovec $557,830.00 in damages. (Docket No. 215.) The jury also rejected Synagro's counterclaim. (Docket No. 215.) Pursuant to this jury verdict, judgment was entered accordingly. (Docket No. 216.)

On October 19, 2007, Jalovec filed a Bill of Costs, (Docket No. 217), and October 24, 2007, Jalovec filed a motion for attorney's fees and non-taxable expenses, (Docket No. 221). Synagro has responded to Jalovec's Bill of Costs and motion for attorney's fees, (Docket No. 227, 228,) and on November 19, 2007, Jalovec replied, (Docket No. 232, 233). On November 20, 2007, Synagro

moved to strike Jalovec's response to Synagro's objection to the Bill of Costs, (Docket No. 239), to which Jalovec responded on November 27, 2007, (Docket No. 240).

On October 25, 2007, Synagro filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or alternatively for a new trial. (Docket No. 224, 225.) On November 15, 2007, Jalovec responded, (Docket No. 230), and on November 29, 2007, Synagro replied, (Docket No. 242). The pleadings on these post-trial motions are closed and ready for resolution.

**SYNAGRO'S MOTIONS**

Synagro moves the court to enter judgment as a matter of law or alternatively for a new trial. (Docket No. 225.) First, Synagro argues that Jalovec failed to prove damages. (Docket No. 225 at 2-4.) Synagro points out that Jalovec brought this action in his individual capacity and not on behalf of any of his many companies. (Docket No. 225 at 3.) Synagro contends that Jalovec is precluded from being awarded damages because he failed to introduce any personal financial records or tax returns, and failed to introduce any evidence that any lost company profit would have gone to him. (Docket No. 225 at 3.)

As a procedural matter, Synagro's motion regarding damages fails because Synagro failed to raise this issue "at any time before the case is submitted to the jury" as is required by Fed. R. Civ. P. 50(a)(2). By failing to raise this issue prior to submitting the case to the jury, Synagro waived its opportunity to now raise the issue by way of a motion for a judgment as a matter of law or for a new trial under Fed. R. Civ. P. 50(b). The court finds that Synagro has failed to preserve this argument regarding damages by failing to raise the issue at any time before the case was submitted to the jury, and therefore shall not further address the merits of Synagro's argument. In reply to Jalovec's brief raising this procedural flaw, Synagro alternatively argues that it should be granted a

new trial under Fed. R. Civ. P. 59, because the award was excessive and against the weight of the evidence.

Second, Synagro argues that it should be entitled to judgment on its counterclaim because the evidence relating to this issue is unrebutted. Regardless of whether or not the contract clearly established that Jalovec was required to pay for the roof repairs, the jury was instructed on the issue of waiver, and thus could have reasonably concluded that Synagro waived any claim it had to reimbursement for the roof repair. The evidence adduced at trial supports a jury finding of waiver, and thus Synagro is not entitled to judgment on its counterclaim as a matter of law.

Turning to Synagro's motion for a new trial, Synagro sets forth three reasons: (1) the jury's damage award lacks support in the evidence; (2) the jury's verdict is against the manifest weight of the evidence; and (3) it did not receive a fair trial. The court shall address each of these in turn.

The court finds that the jury's damage award is sufficiently supported by the evidence. Both parties' experts testified that there were numerous variables that would affect the calculation of lost profits over the term of the contract. Jalovec's expert testified that Jalovec's lost profits were in the range of $1.0 to 1.3 million, whereas Synagro's expert testified that Jalovec's lost profits were in the range of $219,000 and $416,000. The jury did not accept either expert's damage assessment, but instead awarded damages in the amount of $557,830.00, which is slightly less than one-half of the midpoint of Jalovec's expert's estimate range.

There may be any number of rational explanations as to how the jury arrived at its damage award, none of which need be discussed here. In a case such as this, where jury damage calculations coincide with the opposing testimony of the experts, the court need not directly trace the exact route that the jury took in arriving at its verdict in order to conclude that the verdict is supported by the evidence. As a number that is solidly within the range of damages provided by the experts, and is,

4

in fact, far closer to the estimates provided by Synagro's expert than Jalovec's, the court has no problem concluding that the jury's award is supported by the evidence.

Second, the court finds that there was ample evidence to support the verdict. In its motion, Synagro argues that the evidence adduced at trial demonstrates that Jalovec breached the contract. (Docket No. 225 at 5-6.) However, finding that Jalovec's actions constituted breaches of the contract is not sufficient; the jury must also find that these breaches were material. In this regard, the court finds that there was sufficient evidence presented to permit the jury to conclude that any of Jalovec's alleged breaches were not material breaches, and thus Synagro was not justified in terminating the contract.

As for its third basis supporting its request for a new trial, Synagro presents four separate reasons: (1) the court improperly admitted parol evidence and without it, no rational jury could have found for Jalovec and against Synagro; (2) Jalovec's expert's testimony should not have been admitted; (3) the court improperly denied Synagro the opportunity to present an unclean hands defense; and (4) the court improperly refused Synagro's request for a special verdict question addressing the issue of good faith. The court previously considered Synagro's arguments and ruled on them. Since the court stands by its prior rulings, it will make only brief additional comment, where necessary, on what are, in effect, requests for reconsideration.

With respect to Synagro's arguments regarding the admissibility of parol evidence and the testimony of Jalovec's expert, the court stands by its prior rulings set forth in response to the parties' motions in limine and those stated on the record during trial. The court shall not revisit the issues here.

As for Synagro's argument that the court improperly denied Synagro the opportunity to present an unclean hands defense, the court stands by its earlier order and the reasoning set forth therein. (Docket No. 74.) Permitting amendment would have been futile because under Wisconsin

5

law, the unclean hands doctrine applies only to equitable claims and Jalovec's claims were all founded in law. (Docket No. 74.)

As for Synagro's argument that the court improperly denied its request for a special verdict question addressing the issue of good faith, the court finds the defendant's position is without merit. Synagro requested that Question 1 of the special verdict ask, "Did James A. Jalovec breach the duty of good faith in performing his duties under the Sub-Contract with Synagro Midwest, Inc.?" (Docket No. 212-3.) Synagro argued during the jury instruction conference that this question regarding good faith be added because if the jury found that Jalovec did not comply with his duty of good faith, Synagro would prevail. Specifically, Synagro argued that a finding of a lack of good faith would be per se dispositive, and thus if the jury found a lack of good faith, it was not necessary for the jury to consider whether Synagro complied with the contract's termination provisions.

The court is not persuaded by Synagro's proposition that any demonstration of a lack of good faith on the part of Jalovec alone entitled Synagro to prevail in this case. First, the jury was appropriately instructed on the issue of good faith. (Docket No. 214 at 18.) In addition to advising the jury that the implied duty of good faith is a part of any contract, just as if the contract had explicitly stated it, the jury was instructed that "[w]hen a contract requires a party use its 'best efforts' to fulfill its contractual obligations, the notion of 'best efforts' incorporates the concept of good faith." (Docket No. 214 at 18.) The contract explicitly called upon Jalovec to "use his best efforts to maintain and improve Synagro's relationship and profitability with the City of Racine Wastewater Utility." (Docket No. 1 at 9, ¶2.4.) Therefore, the jury was advised to consider good faith, and a separate question in the special verdict was not required.

Furthermore, Synagro erroneously believes that if Jalovec's conduct had been found to be lacking in good faith, this would have excused Synagro from complying with the contract's

6

termination provision. The applicable portion of this termination provision permitted termination of the contract if "the other party fails to observe or perform any material covenant or agreement contained in this agreement for ten (10) business days after written notice thereof has been given to such other party . . . ." (Docket No. 1 at 13, ¶8.1.) This means that if Jalovec breached the contract by demonstrating a lack of good faith or any other provision, Synagro could only terminate the contract if the breach was material and it complied with the ten-day notice provision. Synagro fails to present any legal support for its position that a lack of good faith alone avoids the termination procedure of the contract. This is what the contract provided, and these are the questions which were presented to the jury.

The question of materiality was presented in Question 1 of the special verdict, to which the jury found that Jalovec did not fail to observe or perform any material covenant or agreement. (Docket No. 215.) Based upon the jury instructions, this question subsumes the issue of good faith/best efforts. In answering "No" to this question, the jury necessarily found that Jalovec did not breach a material duty of good faith. Thus, the question of good faith was appropriately presented to the jury, and the special verdict reflects the jury's rejection of Synagro's position. Synagro's motions will be denied.

**JALOVEC'S MOTIONS**

Jalovec has submitted a Bill of Costs under 28 U.S.C. § 1920, using this district's standard form, AO 133, available at http://www.wied.uscourts.gov/BillofCosts.pdf. Jalovec requests costs totaling $13,332.34. (Docket No. 217). Synagro objects to Jalovec's Bill of Costs on the basis that Jalovec failed to show proof of actual payment of these costs but instead has presented only a general itemization of costs. (Docket No. 227.)

As a preliminary matter, the court shall address Synagro's motion to strike Jalvoec's reply. (Docket No. 239.) On October 22, 2007, following Jalovec's submission of the Bill of Costs, the

7

Case 2:05-cv-00250-AEG   Filed 12/07/07   Page 7 of 13   Document 244

Clerk of Court asked Synagro to file any objections on or before November 5, 2007. (Docket No. 220.) The Clerk then instructed Jalovec to submit its response no later than November 13, 2007, and Synagro to file any reply no later than November 20, 2007. (Docket No. 220.) On November 19, 2007, Jalovec filed what is docketed as a "Brief in Support" of his Bill of Costs. (Docket No. 233.) This document is a single paragraph and simply asserts that Jalovec has paid all costs set forth on the Bill of Costs. (Docket No. 233.) This document references the affidavit of Joyce Cubinski, an employee of Jalovec's attorneys in charge of bookkeeping, wherein she avers that Jalovec has paid all costs set forth on the Bill of Costs. (Docket No. 238 at ¶4.) Although the court acknowledges that Jalovec's submission was untimely under the briefing schedule established by the Clerk of Court, the court finds that Synagro was not prejudiced by the untimeliness. Therefore, the court declines to exercise its discretion to strike the submission, and the court shall deny Synagro's motion to strike. (Docket No. 239.)

As for Jalovec's Reply Brief Regarding Motion for Award of Attorneys' Fees and Nontaxable Expenses, (Docket Nos. 232, 233), which Synagro implies was also untimely, (Docket No. 239,) Synagro's objection is without merit. Jalovec filed his original motion for attorneys' fees and nontaxable costs on October 24, 2007. (Docket No. 221.) On November 5, 2007, Synagro responded. (Docket No. 228.) Pursuant to Civil L.R. 7.1(b), Jalovec had 14 days in which to respond, and thus his reply filed on November 19, 2007 was timely.

28 U.S.C. § 1924 states that an affidavit of the prevailing party's attorney stating that each cost listed on the Bill of Costs "is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed" is all the verification necessary to permit a court to order the payment of taxable costs.

In addition to the Declaration completed by Jalovec's attorney as part of the Bill of Costs, (Docket No. 217), which standing alone the court finds sufficient to support an order for the

8

payment of costs, Jalovec has provided an additional affidavit attesting to the fact that he has paid all costs listed on the Bill of Costs, (Docket No. 238). Therefore, the court finds that Jalovec is entitled to the $13,332.34 requested in his Bill of Costs. The Clerk shall amend the judgment accordingly.

Turning now to Jalovec's motion for attorneys' fees and nontaxable costs, section 10.3 of the contract that formed the basis for this dispute states:

> Costs and Fees: The prevailing party in any legal proceeding brought by or against the other party to enforce any provision or term of this AGREEMENT shall be entitled to recover against the non-prevailing party the reasonable attorneys' fees, court costs and other expenses incurred by the prevailing party.

(Docket No. 218-2 at 6.)

Similar to its objection to Jalovec's request for costs, Synagro objects to Jalovec's motion for attorney's fees and nontaxable expenses, (Docket No. 221), on the basis that Jalovec failed to demonstrate that he actually paid for any of the requested attorney's fees, (Docket No. 228). Synagro also argues that the time entries of Attorney Jeffrey Mawicke should be excluded because Attorney Mawicke was a fact witness in the case. Further, Synagro argues that certain hours were excessive, redundant, or otherwise unnecessary.

Jalovec has replied, (Docket No. 232, 233), and provided affidavits indicating that he has paid all costs incurred, (see Docket Nos. 234, 236, 238). Further, Jalovec requests the payment of additional fees incurred since he first filed his motion for attorneys' fees. Jalovec argues that Synagro's reliance upon the "lodestar" method of determining reasonable attorneys' fees is misplaced because such analysis applies only to statutory fee shifting provisions and the present case involves the payment of attorneys' fees pursuant to contract. Thus, Jalovec argues, the only applicable question is whether the fees incurred were commercially reasonable.

9

When a party is entitled to costs and attorneys' fees pursuant to a contract, the court shall award the prevailing party the costs and fees incurred if those expenses were commercially reasonable. Medcom Holding Co. v. Baxter Travenol Lab., Inc., 200 F.3d 518, 521 (7th Cir. 1999). "[R]easonableness must be assessed using the market's mechanisms. . . . If the bills were paid, this strongly implies that they meet market standards." Id. at 520 (citing Balcor Real Estate Holdings v. Walentas-Phoenix Corp., 73 F.3d 150, 152 (7th Cir. 1996)).

Substantial costs were incurred by Jalovec in this litigation. (See Docket No. 218.) The total bill for attorneys' fees incurred through October 19, 2007 encompasses 68 pages, documents a total of 1,558.3 hours for a total of $320,595.00. (See Docket No. 218-3.) Jalovec has submitted a Bill of Costs documenting $13,332.34 of expenses. (Docket No. 217.) Additionally, Jalovec requests $78,430.60 in nontaxable costs. According to the affidavit of Jalovec's attorney, these costs include $32.76 for electronic filing charges, $71,556.25 in expert witness fees, (see Docket No. 218-5), $3,012.89 in Westlaw charges, $12.76 in long-distance telephone charges, $406.47 for postage and other delivery charges, $96.00 for parking, $2,324.21 in travel expenses, $174.76 for local meals, $484.50 for investigative services, (Docket No. 218-7), and $80.00 for subpoenas of non-testifying witnesses. (Docket No. 218.)

According to the affidavit of an employee of plaintiff's law firm, Joyce Cubinski, as of November 15, 2007, Jalovec has paid $321,110.91 in fees and $16,535.10 in costs. (Docket No. 238.) This figure for costs does not distinguish between taxable and nontaxable costs. These expenses were incurred through October 19, 2007. (Docket No. 238.) Fees incurred since October 19, 2007 have not yet been billed by Jalvoec's attorneys and thus have not been paid by Jalovec. (Docket No. 238.) However, Jalovec has paid all items included on the Bill of Costs, (Docket No. 217), submitted in this case. (Docket No. 238.) Jalovec's accountant has also submitted an affidavit stating that Jalovec has paid all expert witness fees incurred in this case. (Docket No. 236.)

Upon a review of the various submissions, Jalovec's numbers do not add up. First, Jalovec claims he paid $321,110.91 in fees but the statement provided to the court reflects an obligation of only $320,595.00 or $515.91 less than what he is alleged to have paid. Similarly, although the affidavit of October 19, 2007, submitted by Jalovec's attorney requests $78,430.60 in nontaxable costs, the total of the sums included in the affidavit amount to $78,180.60 or $250.00 less than the amount requested. Third, according to the Westlaw statements submitted to the court, Jalovec has set forth Westlaw expenses of only $2,413.63 or $599.26 less than requested. (Docket No. 218-6.) Two entries on the Westlaw statement for a total of $657.18 are for expenses incurred in regard to a different client of the firm, and one entry, for what appears to be $37.96 is unreadable, thus making it impossible for the court to determine for which client these research expenses were incurred. (Docket No. 218-6.) Jalovec has supported through documentary evidence his claims for $484.50 for investigative services and $32.76 for electronic filing charges. Other amounts are not supported with documentary evidence other than the affidavit of counsel. Fourth, based upon the affidavit of Jalovec's attorney, Jalovec incurred, at the most, $6,874.35 in nontaxable costs, excluding expert witness fees which were paid separately. According to the Bill of Costs submitted, Jalovec has incurred $13,332.34 of taxable expenses. Thus, the total of the nontaxable and taxable amounts is $20,206.69. However, according to the affidavit of Joyce Cubinski, Jalovec has paid only $16,535.10 in total costs or $3,671.59 less than the amount requested in his attorney's affidavit and Bill of Costs.

The court finds it commercially unreasonable that a client would pay more than his attorneys charged him. Thus, the court shall order Synagro to pay $320,595.00 for attorney fees, the amount reflected on the bill provided by Jalovec's attorneys. (<u>See</u> Docket No. 218-3.) Similarly, the court finds it unreasonable to require Synagro to pay more in costs than those actually paid by Jalovec. Jalovec has established he has paid $16,535.10 in costs, (Docket No. 238), an amount

11

Synagro shall be ordered to pay. This represents the $13,332.34 set forth in the Bill of Costs, (Docket No. 217), and $3,202.76 in nontaxable costs. Although the court acknowledges that the itemization set forth in the affidavit of Jalovec's attorney can be considered as commercially reasonable costs, the court finds that Jalovec failed to establish that he actually paid these costs; in all likelihood, many of the law firm overhead costs were probably incorporated into the hourly rate charged to Jalovec. If so, it would be imporoper to now extract them for purposes of cost reimbursement. The court shall also order Synagro to pay to Jalovec $71,556.25 in expert witness fees, (see Docket No. 218-5).

As for attorneys' fees incurred by Jalovec but not yet billed by his attorneys, and thus not yet paid by Jalovec, the court finds that these charges are commercially reasonable and will order Synagro to pay these fees, totaling $13,840.00. (Docket No. 234-2.) Jalovec also requests $770.91 in additional Westlaw costs. However, Jalovec's attorneys have not yet received an invoice from Westlaw, and thus Jalovec has not yet paid these additional costs.

Although Jalovec has not yet actually paid these recent fees and costs, they have been incurred. It would certainly be an ineffective application of judicial resources to further delay the final resolution of this matter and require Jalovec's attorneys to send their client a bill, wait for Jalovec to pay, require a supplemental request for additional attorneys' fees and costs, have Synagro file an objection and ultimately issue yet another court order for payment. Since Jalovec has paid more than three-hundred-thousand dollars in attorneys' fees in this case, it is reasonable to assume that he would pay this last bill when submitted. Thus, the court will include these additional charges. Accordingly, the court shall order Synagro to pay **$334,435.00** in attorneys' fees and **$75,529.92** in costs.

**IT IS THEREFORE ORDERED** that Synagro's motion for a judgment as a matter of law or in the alternative for a new trial, (Docket No. 224), is **denied**.

**IT IS FURTHER ORDERED** that Synagro's motion to strike, (Docket No. 239), is **denied**.

**IT IS FURTHER ORDERED** that Jalovec's request for costs as set forth in his Bill of Costs, (Docket No. 217), is **granted**. Synagro shall pay to Jalovec **$13,332.34** in taxable costs. The clerk shall amend the judgment accordingly.

**IT IS FURTHER ORDERED** that Jalovec's motion for costs and fees, (Docket No. 221), is **granted as modified**. Synagro shall pay to Jalovec **$334,435.00** in attorneys' fees and **$75,529.92** in nontaxable costs. The clerk shall amend the judgment accordingly.

Dated at Milwaukee, Wisconsin this 7th day of December, 2007.

s/AARON E. GOODSTEIN
United States Magistrate Judge